UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL MOORE,

        Petitioner,

                                  Case No. 15-cv-10613

v.

                                  HON. MARK A. GOLDSMITH

ANTHONY STEWART,

        Respondent.

_____/

**OPINION & ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

Petitioner Rachel Marie Moore, presently confined at the Women's Huron Valley
Correctional Facility in Ypsilanti, Michigan, has filed a pro se petition for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging her conviction for first-degree
premeditated murder, Mich. Comp. Laws § 750.316(1)(a).

For the reasons stated below, the Court denies the petition for a writ of habeas corpus,
declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on
appeal.

## I.  BACKGROUND

Petitioner was convicted of the above charge following a jury trial in the Midland County
Circuit Court. Her conviction "stem[med] from the shooting death of Brian Reichow, a married
man with whom [she] had an on-again-off-again volatile relationship." People v. Moore, No.
311870, 2013 WL 6037177, at *1 (Mich. Ct. App. Nov. 14, 2013). Petitioner's conviction was
affirmed on appeal. Id. at *5; People v. Moore, 845 N.W.2d 498 (Mich. 2014) (denying

1

application for leave to appeal because the court was "not persuaded that the questions presented should be reviewed by this Court").

Petitioner seeks a writ of habeas corpus on the following grounds:

> i. "Ms. Moore's 1st degree murder conviction should be vacated as a matter of due process because the prosecution failed to introduce evidence that Rachel Moore premeditated murder."
>
> ii. "Ms. Moore should be entitled to a new trial because her 5th, 6th, and 14th Amendment rights to present a defense and to testify at trial were violated. . . . The prosecutor twice argued to the jury to reject Ms. Moore's testimony as incredible for no reason other than that she had a reason to lie because otherwise she would be convicted of murder."
>
> iii. "Ms. Moore's 6th Amendment rights of Confrontation, cross-examination and assistance of counsel were violated when the . . . jury was exposed to facts not in evidence that addressed the very foundation of her self-defense claim that Mr. Reichow pulled a gun out of his glove box and pointed it at her, which she then seized from him and fired at him to protect herself."

Pet. at 5, 7-8 (cm/ecf pages).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the

state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 562 U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id.  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III.   ANALYSIS

### A.  Claim One: Sufficiency of the Evidence

Petitioner contends that there was insufficient evidence to establish that she premeditated

the death of Brian Reichow.    This Court disagrees.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."    In re Winship, 397 U.S. 358, 364 (1970).    But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).    This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.    Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    Id. at 318-319 (emphasis in original).

A federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.    A federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the Jackson standard.    See Cavazos v. Smith, 565 U.S. 1, 2 (2011).    "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."    Id.    For a federal habeas court reviewing a state-court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality."    Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam).    On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983).    It is the province of the fact finder to weigh

the probative value of the evidence and resolve any conflicts in testimony.    Neal v. Morris, 972

F.2d 675, 679 (6th Cir. 1992).    A habeas court, therefore, must defer to the fact finder for its

assessment of the credibility of witnesses.    Matthews v. Abramajtys, 319 F.3d 780, 788 (6th

Cir. 2003).    The Court does not apply the reasonable doubt standard when determining the

sufficiency of evidence on habeas review.    Walker v. Russell, 57 F.3d 472, 475 (6th Cir. 1995).

To constitute first-degree murder in Michigan, the state must establish that a defendant's

intentional killing of another was deliberated and premeditated.    See Scott v. Elo, 302 F.3d 598,

602 (6th Cir. 2002).    The elements of premeditation and deliberation may be inferred from the

circumstances surrounding the killing.    See Johnson v. Hofbauer, 159 F. Supp. 2d 582, 596

(E.D. Mich. 2001); see also DeLisle v. Rivers, 161 F.3d 370, 389 (6th Cir. 1998) (premeditation

and intent to kill may be inferred from circumstantial evidence).    Circumstantial evidence of

premeditation may include: "(1) the prior relationship of the parties, (2) the defendant's actions

before the killing, (3) the circumstances . . . of the killing, and (4) the defendant's conduct after

the killing."    Cyars v. Hofbauer, 383 F.3d 485, 491 (6th Cir. 2004).    Premeditation and

deliberation may also be inferred from the type of weapon used and the location of the wounds

inflicted.    See People v. Berry, 198 Mich. App. 123, 128; 497 N.W.2d 202, 204 (Mich. Ct. App.

1993).    Use of a lethal weapon will support an inference of an intent to kill.    Johnson, 159 F.

Supp. 2d 596.

Although the minimum time required under Michigan law to premeditate "is incapable of

exact determination, the interval between initial thought and ultimate action should be long

enough to afford a reasonable man time to subject the nature of his response to a 'second look.'"

See Williams v. Jones, 231 F. Supp. 2d 586, 594-595 (E.D. Mich. 2002).    "A few seconds

between the antagonistic action between the defendant and the victim and the defendant's

decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." Alder v. Burt, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." Johnson, 159 F. Supp. 2d at 596.

The Michigan Court of Appeals rejected Petitioner's claim as follows:

The evidence was sufficient for a rational juror to conclude that defendant premeditated Reichow's murder. Defendant and Reichow had a volatile relationship that involved physical violence. On one occasion, defendant broke Reichow's jaw when they were arguing and, on another occasion, she went to his home, damaged approximately $10,000 worth of property, and engaged in a physical altercation with him that prompted him to call 911. Reichow later filed an ex parte petition for a personal protection order against defendant in which he stated that defendant was stalking him, that she had entered his home without permission on more than one occasion, and that he was afraid for his life because she always attacked him from behind when he did not expect it. Defendant also sent Reichow e-mails expressing her hatred for him, stating that she could not wait for him to die, and exclaiming "DIE, DIE, DIE!"

Defendant testified that, on the day of the shooting, she left work early because she was "floored" after reading Reichow's 2:20 p.m. e-mail, in which he stated that he wanted to end their relationship. Reichow sent the e-mail only hours after they had spent the morning looking for a place to live together because Reichow purportedly wanted to divorce his wife. Defendant arrived home from work at approximately 3:30 p.m., grabbed a vase of flowers that Reichow had given her, and retrieved a gun. She then went to Reichow's apartment, smashed the vase of flowers and emptied his trash on his front porch. Thereafter, she attempted to call Reichow several times. Although there was a Burger King restaurant close to Reichow's apartment, defendant traveled to another Burger King restaurant that was close to a home that Reichow was remodeling. Defendant saw Reichow pull into the Burger King parking lot in his truck and she followed him into the parking lot.

Defendant got out of her vehicle and into Reichow's truck.

Defendant maintained that she shot Reichow in self-defense after he pulled a gun out of the glove box and pointed it at her. She claimed that she grabbed the gun and then shot Reichow four times. Defendant's testimony was refuted by evidence showing that she brought the gun with her. Reichow was shot with a .38-caliber revolver, and defendant admitted that she owned a .38-caliber revolver. After the shooting, an empty gun case for a .38-caliber revolver was found in defendant's home, along with a box of .38-caliber bullets with some bullets missing. As previously indicated, defendant testified that she grabbed her gun when she went home after work and before she went to Reichow's apartment. After testifying as such, she immediately recanted her statement that she had grabbed her gun.

Defendant admitted that she shot Reichow four times at close range. One witness testified that defendant admitted that she shot Reichow "numerously" because he kept promising to leave his wife but instead wrote her "Dear John" letters. A second witness testified that defendant claimed that she shot Reichow because he gave her a gun and told her to shoot him. A third witness testified that defendant claimed that she shot Reichow after he handed her a gun, and that she looked up, saw people looking at her, and then shot him three more times in the chest. Finally, a fourth witness testified that defendant admitted that she shot Reichow because he was "playing head games with her" and she "couldn't take it anymore." That witness further testified that defendant stated that after the initial shot "she looked around and she just kept shooting."

After the shooting, defendant fled the scene, did not call 911, and threw the gun, Reichow's car keys, and her cell phone in a lake. She then went to her son's father's house, cut her hair, had intimate relations with her son's father, and gave the fathers of her two children money to take care of them. Defendant also left two messages on Reichow's home phone. Reichow's wife described defendant as "hysterical" on the messages. In one message, defendant stated that she was "sick to [her] stomach." Further, over time, defendant discussed the shooting with seven people and had 120 phone conversations with her son's father, but she did not tell any of them that she had shot Reichow in self-defense. One witness testified that on the day of Reichow's funeral, defendant remarked that "the bastard was burning in hell" and laughed about it. Another witness testified that defendant was nonchalant in describing how she shot Reichow, as if it were a joke. A third witness testified that after discussing Reichow's death, defendant stated that she did not regret it "[b]ecause some people deserve

> what they get." Accordingly, the evidence was sufficient for a
> rational juror to conclude that defendant premeditated Reichow's
> murder.

<u>Moore</u>, 2013 WL 6037177, at *1-2.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation in killing the victim. There was testimony that Petitioner fired multiple gunshots, which would be sufficient to establish premeditation and deliberation. <u>See</u> <u>Thomas v. McKee</u>, 571 F. App'x 403, 407 (6th Cir. 2014). Evidence that the victim had been shot at close range supports a finding of premeditation and deliberation. <u>See</u> <u>Crenshaw v. Renico</u>, 261 F. Supp. 2d 826, 833 (E.D. Mich. 2003). The fact that Petitioner fled the scene afterwards further supports a finding of premeditation. <u>See, e.g.</u>, <u>Marsack v. Howes</u>, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).

Furthermore, Petitioner's lack of attempt to seek medical help for the victim could also lead a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation when she killed the victim. <u>See</u> <u>Delisle</u>, 161 F.3d at 389 (circumstantial evidence of premeditation established by petitioner's failure to help victims after car drove into lake); <u>Healy v. Maggio</u>, 706 F.2d 698, 700 (5th Cir. 1983) (leaving victim to bleed to death in the car a sign that the killing was intentional and not accidental). Because the evidence produced at trial was sufficient for a reasonable trier of fact to find that Petitioner premeditated the death of Reichow, Petitioner is not entitled to habeas relief on her first claim.

**B.   Claim Two:   Prosecutorial Misconduct**

Petitioner next alleges that her due process rights were violated when the prosecutor twice argued to the jury that her testimony should be rejected and found incredible because she had a reason to lie to avoid a murder conviction.

The Michigan Court of Appeals reviewed and rejected Petitioner second claim under a plain-error standard because Petitioner failed to preserve the issue as a constitutional claim.[1]

In <u>Fleming v. Metrish</u>, 556 F.3d 520, 532 (6th Cir. 2009), the Sixth Circuit held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. In a subsequent decision, the Sixth Circuit held that that plain-error review is not equivalent to adjudication on the merits, so as to trigger AEDPA deference. See <u>Frazier v. Jenkins</u>, 770 F.3d 485, 496 n.5 (6th Cir. 2014). The Sixth Circuit has noted that "the approaches of <u>Fleming</u> and <u>Frazier</u> are in direct conflict." <u>Trimble v. Bobby</u>, 804 F.3d 767, 777 (6th Cir. 2015). When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the U.S. Supreme Court or by the Sixth Circuit sitting en banc. See <u>Darrah v. City of Oak Park</u>, 255 F.3d 301, 310 (6th Cir. 2001). Thus, the Court applies the AEDPA's deferential standard of review to these claims, even though they were reviewed only for plain error.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." <u>Millender v. Adams</u>, 376 F.3d 520, 528 (6th Cir. 2004) (citing <u>Bowling v. Parker</u>, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). Prosecutorial

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because Petitioner failed to object at trial. This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. See <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997). In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." <u>Hudson v. Jones</u>, 351 F.3d 212, 215 (6th Cir.2003) (citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997)). This Court believes it would be easier to proceed to the merits of the claim.

misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. <u>Donnelly</u>, 416 U.S. at 643-645. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2155 (2012).

If a defendant testifies, a prosecutor may attack his or her credibility to the same extent as any other witness. <u>See</u> <u>United States v. Francis</u>, 170 F.3d 546, 551 (6th Cir. 1999). A prosecutor may argue that a defendant is lying during her closing argument "when emphasizing discrepancies between the evidence and that defendant's testimony." <u>Id.</u> To avoid any impropriety, however, the prosecutor's comments must "reflect reasonable inferences from the evidence adduced at trial." <u>Id.</u>

The prosecutor's comments about Petitioner being a liar were made when the prosecutor was comparing Petitioner's testimony with the testimony of the other witnesses. The prosecutor's remarks reflect reasonable inferences from evidence adduced at trial, and thus it was not improper for the prosecutor to suggest that petitioner was lying. <u>See</u> <u>United States v. Johnson</u>, 169 F. App'x 946, 950 (6th Cir. 2006). Petitioner second claim is without merit.

### C.      Claim Three: Jury Misconduct

Petitioner next alleges her Confrontation Clause rights were violated when the jury was exposed to facts not in evidence that directly conflicted with her self-defense claim that Reichow pulled a gun out of his glove box and pointed it at her, which Petitioner claims she seized from him and then fired at him to protect herself. In particular, Petitioner contends that, during

deliberations, "Juror (4) went to the Ford dealership that Moore worked at for over 15 years, had a salesperson (3rd party) sit her in a truck that she deemed comparable to Reichow's truck, then preceded to conduct a full-blown investigation to see if she could get some dimensions and try to grab something out of the glovebox." Pet. at 2 (cm/ecf page) (Dkt. 1-1).

A juror's performance and report to other jurors of the results of an out-of-court experiment conflicts with a criminal defendant's constitutional right to a fair and impartial jury that considers only the evidence presented at trial. See Doan v. Brigano, 237 F.3d 722, 733 (6th Cir. 2001). However, to obtain habeas relief, a petitioner must show that the juror's out-of-court experiment had a substantial and injurious effect or influence on the jury's verdict. Id. at 736; see also Mason v. Mitchell, 320 F.3d 604, 638 (6th Cir. 2003). A hearing may be required where a defendant has shown potentially improper extraneous influence on a juror "to determine the circumstances, the impact thereof, and whether or not [they were] prejudicial." Remmer v. United States, 347 U.S. 227, 230 (1954).

The trial court conducted a Remmer hearing, placing each of the jurors under oath in a post-conviction proceeding to determine what happened, whether there was an impact, and whether any prejudiced inured to the defendant. Each juror testified that the one juror's experiment did not impact their deliberations or their verdict. See generally 6/18/2012 Hr'g Tr. (Dkt. 6-10). As a result, the trial court held, and the Michigan Court of Appeals affirmed, that a new trial was unwarranted. Moore, 2013 WL 6037177, at *4-5.

Petitioner is not entitled to habeas relief because she failed to show that the juror's out-of-court experiment had a substantial or injurious influence on the verdict. Moreover, a claim that a jury was influenced by extraneous information is amenable to a harmless error analysis on habeas review. Nevers v. Killinger, 169 F.3d 352, 370 (6th Cir. 1999). In light of

the substantial evidence against Petitioner in this case, Petitioner is unable to establish that she would have been prejudiced by the fact that the jury may have considered extraneous information in this case. The Michigan Court of Appeals reasonably determined that the out-of-court experiment did not have an injurious effect or influence on the jury. Furthermore, the Michigan Court of Appeals found that, due to the overwhelming evidence presented, any error was harmless. Petitioner is not entitled to relief on her third claim.

### D.  Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied. Accordingly, a certificate of appealability is not warranted in this case.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 1), declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: July 13, 2017                          s/Mark A. Goldsmith
     Detroit, Michigan                          MARK A. GOLDSMITH
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2017.

s/Karri Sandusky
Case Manager